UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SERLANDING KEITH CROWLEY,

Plaintiff,

v.

SARAH SCHROEDER et al.,

Defendants.

Case No. 2:26-cv-58

Honorable Robert J. Jonker

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

## I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events

about which he complains occurred at that facility. Plaintiff sues the following MBP staff: Warden Sarah Schroeder, Correctional Officer Unknown Nickelson, Hearing Investigator Unknown Hemmila, and Hearing Officer Unknown Mohrman. (Compl., ECF No. 1, PageID.2.)

In Plaintiff's complaint, he alleges that on October 29, 2025, nonparty Inspector Unknown Leach was making rounds in G-unit. (*Id.*, PageID.3.) At that time, Plaintiff had a pending lawsuit against nonparty Leach for retaliation. (*Id.*)

The next day, October 30, 2025, Plaintiff was sent to segregation for a "falsified misconduct"[1] ticket for possession of a weapon. (*Id.*) According to Plaintiff, the misconduct ticket he received was based on Defendant Correctional Officer Nickelson's false statement that Plaintiff had removed the handle of the footlocker in his cell. (*Id.*) Plaintiff told Defendant Hearing Investigator Hemmila about a cell inspection sheet that was completed before Plaintiff entered the cell, which indicated that the footlocker in that cell was missing its handle. (*Id.*) Plaintiff asked Defendant Hemmila why he was helping Defendant Nickelson lie, and Defendant Hemmila told Plaintiff that Plaintiff was "not going to beat the misconduct[.]" (*Id.*)

Plaintiff spoke with "the Warden" on November 18, 2025, and told her that he was not supposed to be in segregation for possession of a weapon because there was no weapon or material to form a weapon found. (*Id.*) "The Warden" told Defendant Hemmila "to change the missing footlocker from before to after" and "to highlight missing footlocker handle." (*Id.*) On December 2, 2025, Plaintiff again spoke with "the Warden," and asked her why she told Defendant Hemmila to change the cell inspection sheet, and she told Plaintiff, "Go ticket free" and walked away. (*Id.*)

---

[1] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

Plaintiff alleges that "the Hearing Officer" never checked the cell inspection sheet. (*Id.*) Additionally, Plaintiff claims that "the Hearing Officer" was racist and biased against Plaintiff. (*Id.*)

On an unspecified date, Plaintiff sent a copy of the cell inspection sheet to his mother. (*Id.*, PageID.4.) "The mail room McCarthy Grant" took Plaintiff's mail, and when Plaintiff received his mail the cell inspection sheet was missing. (*Id.*) Plaintiff alleges that his mail is not being sent to his family "because the Warden is telling her officials to intervene." (*Id.*)

Based on the foregoing allegations, Plaintiff raises Fourteenth Amendment Procedural Due Process Clause claims, Fourteenth Amendment Equal Protection Clause claims, First Amendment retaliation claims, and First Amendment mail interference claims. Plaintiff seeks injunctive relief and monetary damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Fourteenth Amendment Procedural Due Process Clause Claim**

Plaintiff alleges that he received a "falsified" misconduct ticket for possession of a weapon. (Compl., ECF No. 1, PageID.3.) According to Plaintiff, the misconduct ticket was issued because the handle to his footlocker was missing, but the cell inspection sheet that was completed when Plaintiff moved into that cell noted that the footlocker handle was already missing. (*Id.*)

To state a Fourteenth Amendment procedural due process claim, Plaintiff must show that the sanctions he received as a result of the misconduct conviction "inevitably affect[ed] the duration of [Plaintiff's] sentence" or imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87. However, the sanctions available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence, and placement in segregation or non-bond status for a limited period of time or the receipt of the loss of privileges sanction do not constitute "atypical and significant hardship[s]," as contemplated by

*Sandin*. *See, e.g.*, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (discussing that the loss of disciplinary credits under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence); *Sandin*, 515 U.S. at 484 (holding that placement in segregation for 30 days does not impose an atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant); *cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))).

As an initial matter, Plaintiff names Defendants Schroeder and Mohrman as Defendants, but does not attribute any specific conduct to either of them in the body of his complaint. (Compl., ECF No. 1, PageID.2, 3.) The body of Plaintiff's complaint refers to "the Warden" and "the Hearing Officer," but does not identify those individuals by name. (*See id.*) It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are

without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries”). Because Plaintiff does not attribute any factual allegations to Defendants Schroeder or Mohrman, his claims against those Defendants are subject to dismissal. Even if the Court assumes that Plaintiff's reference to “the Warden” refers to Defendant Schroeder and Plaintiff's reference to “the Hearing Officer” refers to Defendant Mohrman, Plaintiff's complaint still fails to state a claim against those Defendants as discussed below.

Plaintiff alleges that he was taken to segregation on October 30, 2025. (Compl., ECF No. 1, PageID.3.) Plaintiff also alleges that he told the Warden that he was “not supposed to be in [segregation]” on November 18, 2025. (*Id.*) Based on these allegations, Plaintiff's complaint suggests that he was in segregation for a period of at least 19 days. But there is no indication in Plaintiff's complaint of how much more time, if any, Plaintiff spent in segregation. Plaintiff's allegations, which only indicate that he was in segregation for at least 19 days, fail to show that he spent an amount of time in segregation that constituted an “atypical and significant hardship.” *See, e.g.*, *Sandin*, 515 U.S. at 484; *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant).

Aside from the unspecified amount of time Plaintiff spent in segregation, Plaintiff does not specify what, if any, other sanctions he received as a result of the misconduct charge.[2] Therefore, Plaintiff has failed to show that he received any sanctions for this misconduct charge that impacted the duration of his sentence. *See Sandin*, 515 U.S. at 486–87.

[2] The Court notes that Plaintiff's allegations do not specify whether he was found guilty of the misconduct charge. Plaintiff alleges that Defendant Hemmila “convinced the hearing officer to keep the misconduct falsified,” suggesting that Plaintiff was found guilty of the misconduct, but the outcome of the hearing is not explicitly stated in Plaintiff's complaint. (Compl., ECF No. 1, PageID.3.) Regardless, that does not change the Court's analysis of this claim.

Accordingly, Plaintiff has failed to state a Fourteenth Amendment Procedural Due Process Clause claim, and the Court will dismiss those claims.

### B. Fourteenth Amendment Equal Protection Clause Claims—Defendant Mohrman

Plaintiff alleges that "the Hearing Officer"[3] was biased against Plaintiff and that his decision was influenced by racism. (Compl., ECF No. 1, PageID.3.) The Court construes this allegation as raising a Fourteenth Amendment Equal Protection Clause claim.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

[3] As discussed above, this claim is subject to dismissal because Plaintiff's complaint attributes this conduct to "the Hearing Officer" and not specifically to a named Defendant. (Compl., ECF No. 1, PageID.3.) Even if the Court construes Plaintiff's reference to "the Hearing Officer" as referring to Defendant Mohrman, Plaintiff has still failed to state a Fourteenth Amendment Equal Protection Clause claim.

Here, Plaintiff alleges that "the Hearing Officer" was racist and biased against Plaintiff. (Compl., ECF No. 1, PageID.3.) But Plaintiff fails to allege any *facts* to support his conclusory assertions that the Hearing Officer's decision was motivated by racism. Indeed, Plaintiff fails to allege any facts to suggest that he was treated differently than others who were similarly situated. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, any intended Fourteenth Amendment Equal Protection Clause claims will be dismissed.

**C. First Amendment Retaliation Claims**

The Court construes Plaintiff's allegation that he was issued a "falsified" misconduct ticket as raising a First Amendment retaliation claim.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)).

Here, Plaintiff's complaint does not show that he engaged in protected conduct that was a substantial or motivating factor in the alleged retaliatory actions of the named Defendants. Plaintiff alleges that he previously filed a lawsuit against nonparty Inspector Leach. (Compl., ECF No. 1, PageID.3.) And, there are no allegations in Plaintiff's complaint to suggest that he engaged in any other protected conduct. (*See id.*) The allegation that Plaintiff sued nonparty Leach is insufficient to show that Plaintiff engaged in protected conduct that was a motivating factor for the adverse action taken by any of the *named Defendants*. *See Thaddeus-X*, 175 F.3d at 394. Plaintiff does not allege any facts to show a connection between the alleged acts of the named Defendants and the lawsuit Plaintiff filed against nonparty Leach. For example, there is nothing in the complaint to suggest that any of the named Defendants said or did anything to indicate that the issuance of the misconduct ticket was connected to the lawsuit against nonparty Leach. Indeed, Plaintiff's complaint does not indicate that the named Defendants were even aware of the lawsuit against nonparty Leach.

Accordingly, Plaintiff has failed to state a First Amendment retaliation claim and the Court will dismiss those claims.

**D. First Amendment Mail Interference Claims**

Plaintiff alleges that he attempted to send a copy of the cell inspection sheet to his mother and "the mail room McCarthy Grant" took Plaintiff's mail. (Compl., ECF No. 1, PageID.4.) Plaintiff then alleges that he received his mail, but the cell inspection sheet was missing. (*Id.*) Plaintiff alleges generally that "they are not letting [his] mail go out to [his] family because the Warden is telling her officials to intervene." (*Id.*)

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987). Additionally, "isolated instances of interference with prisoners' mail" do not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519, at *2 (6th Cir. Aug. 11, 2000) (*citing Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation.")); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated incidents" of interference with prisoners' rights do not rise to the level of a First Amendment violation).

As an initial matter, Plaintiff's allegations attribute the alleged mail interference to nonparty "McCarthy Grant" and other unidentified individuals referred to only as "they." (Compl., ECF No. 1, PageID.4.) Because these allegations do not attribute factual allegations to particular defendants, they are insufficient to state a claim against the named Defendants. *See Twombly*, 550 U.S. at 544.

Plaintiff also alleges that "the Warden[[4]] is telling her officials [to] intervene." (Compl., ECF No. 1, PageID.4.) To the extent that Plaintiff seeks to hold "the Warden"—presumably Defendant Schroeder—liable due to her supervisory position, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee* [*v. Luttrell*], 199 F.3d [295,] 300 [(6th Cir. 1999)] (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum,"

[4] As discussed above, this claim is subject to dismissal for because Plaintiff fails to attribute the alleged conduct to a specific Defendant. Even if the Court construes Plaintiff's reference to "the Warden" as referring to Defendant Schroeder, he has still failed to state a First Amendment mail interference claim.

> the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Even if the Court construes Plaintiff's allegation as indicating that Defendant Schroeder encouraged the interference with Plaintiff's mail, Plaintiff's allegations do not show a constitutional violation. Plaintiff alleges one specific instance of mail interference when a copy of the cell inspection sheet was allegedly removed from Plaintiff's mail on an unspecified date. (Compl., ECF No. 1, PageID.4.) Plaintiff then alleges generally that "they" are not letting his outgoing mail go to his family because "the Warden is telling her officials to intervene." At most, these allegations show one instance of mail interference, which is insufficient to show a constitutional violation. And, the allegation that "they are not letting [Plaintiff's] outgoing mail go to [his] family" is too vague to show that the alleged mail interference was anything more than isolated incidents.

Accordingly, for these reasons, Plaintiff has failed to state a First Amendment mail interference claim, and the Court will dismiss that claim.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might

raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated: September 2, 2026

/s/ Robert J. Jonker
Robert J. Jonker
United States District Judge